GRIFFIS, P.J.,
for the Court:
¶ 1. This appeal considers the dismissal of two personal-injury complaints filed by Jeánette Carpenter against Kenneth Thompson Builder Inc. (“KTB”), Coastal Masonry, Pro Mow Lawn Care Inc., and Capital Security Services Inc. (collectively referred to as the “Defendants”). On the same day, two separate circuit judges in the same court dismissed the cases. We find that it was reversible error to dismiss Carpenter’s claims.
FACTS.

1. The Accident

¶ 2. On August 15, 2007, Carpenter was injured when she fell on pavement in front *857 of the Jackson County Welcome Center, located at exit 75 on Interstate 10 in Jackson County, Mississippi. The Welcome Center was operated by the Mississippi Department of Transportation (“MDOT”). Carpenter tripped over blue marking tape, located at the entrance to the Welcome Center, and fell. She suffered two broken wrists and severe lacerations and bruising to her face from the impact with the pavement. The statute of limitations on Carpenter’s claims expired on August 15,2010.
■ 2. The First Lawsuit — Carpenter I
¶ 3. On June 26, 2008, Carpenter filed a complaint in the Circuit Court of Jackson County, Mississippi. The case'was styled Jeanette Carpenter v. MDOT and John Does 1-5, Cause No. 2008-00140(2) (referred-to herein as “Carpenter I”). The case was assigned to Circuit Judge Kathy King Jackson. Carpenter’s complaint asserted a claim for negligence. Carpenter alleged that the defendants owed her a duty and were responsible for the maintenance, upkeep, security, construction, and renovations of the property. She alleged that they breached that duty, and that the breach proximately caused her injuries. Carpenter asked for an award of compensatory damages in the amount of $500,000 and punitive damages.
¶ 4. Just over a year later, on August 20, 2009, Carpenter filed a motion for leave to amend her complaint. The circuit court granted the motion by order dated December 9, 2009. Carpenter filed and served her amended complaint, wherein she added two additional defendants, Mallette Brothers Construction Inc. and J.L. McCool Contractors. Mallette and McCool were contractors who worked on-site improvements to the Welcome Center. Upon service of process, there were three defendants properly before the court in Carpenter I: MDOT, Mallette, and McCool.[1]
¶ 5. On March 4, 2010, Carpenter filed her second motion for leave to amend her complaint to add the Defendants. All counsel signed an agreed order to allow the amended complaint except for counsel for MDOT.
¶ 6. Carpenter’s counsel argues that he tried but was not able to get a hearing set before the circuit court prior to the expiration of the limitations period. Specifically, he claims that he attempted to set the motion to amend for a hearing, but that setting the matter “proved to be difficult at best[,] if not impossible.” He obtained numerous dates from the court to schedule Carpenter’s hearing, but her counsel, and counsel for MDOT, were unavailable on the proposed dates. Carpenter also stated that her counsel requested a telephonic hearing, but the court advised her that it did not entertain this type of hearing via telephone. Carpenter states she was advised that the only available hearing date was November 3, 2010.
¶7. Carpenter’s counsel also argues MDOT would not consent to allow the amendment to her complaint' before the expiration of the statute of limitations. , MDOT’s reason for refusing to agree to an entry of the order amending the complaint is not in the record and is not the issue for us to decide on appeal. However, MDOT did not file a response to Carpenter’s motion for leave to amend and, according to Carpenter, was not available for a hearing before the limitations period would expire. *858 In the transcript of the hearing before Judge Jackson, MDOT’s lawyer argued:
What the plaintiff proeedurally did is actually improper. Under the case law, it’s called splitting a cause of action, and in Wilner v. White it was addressed. The supreme court said that it’s improper. It’s not to be done — The proper thing would have been to do the motion to amend, get the hearing set, get the order entered, all before the statute of limitations. I’m leaving the statute of limitations argument to those defendants. But my point is the second lawsuit is actually improper and shouldn’t be consolidated in with this lawsuit.”
We note that MDOT does not state the reason it contested Carpenter’s attempt to amend her complaint.[2] We also recognize that this controversy could have been avoided if MDOT had agreed to the entry of an order, had filed a response, or had asked the court to consider the motion on the pleadings filed.[3]
¶ 8. As a result, Carpenter claims that she had no option but to file a second lawsuit before the expiration of the statute of limitations on August 15, 2010.
3. The Second Lawsuit — -Carpenter II
¶ 9. On July 22, 2010, Carpenter filed another complaint in the Circuit Court of Jackson County. This case was styled Jeanette Carpenter v. KTB, Coastal Masonry, Pro Mow Lawn Care, and Capital Security, Cause No, 2010-00177(1) (referred to. herein as “Carpenter II ”). This case was assigned to Circuit Judge Robert Krebs.
¶ 10. Carpenter argues that she filed this separate lawsuit out of an abundance of caution resulting from the difficulties in getting the order allowing an amendment in Carpenter..! and because of her attorney’s military deployment during July 2010.
k. Motions, Hearings, and-Orders. Entered - -
¶ 11, On September 22, 2010, Carpenter served a motion to consolidate Carpenter I and II. This motion was served on all defendants in both cases.[4]
¶-12. On October 13, 2010, although it was not a named defendant in Carpenter *859 11, MDOT served and filed a “Motion to Intervene and Response to Plaintiffs Motion to Consolidate” in Carpenter II. MDOT asked to intervene in Carpenter II and asked the circuit court not to consolidate the cases. The court did not rule on this motion.
¶ 13. On November 1, 2010, in Carpenter I, the circuit judge signed the order that granted Carpenter leave to file the second amended complaint. On November 12, 2010, Carpenter filed her- second amended complaint, which named the same defendants as Carpenter II.
¶ 14. On November 10, 2010, in Carpenter II, KTB filed a “Motion to Dismiss [B]ased on Prohibition of Splitting Causes of Action and on the Doctrine of Priority Jurisdiction.” KTB asked the court to dismiss the complaint and not to consolidate the cases. KTB’s argument against consolidation was that it should have been filed in Carpenter I, which had priority jurisdiction. Other defendants filed similar motions.
¶ 15. On December 1, 2010, in Carpenter I, Carpenter served a motion to consolidate Carpenter I and II. This motion was served on all defendants in both cases.
¶ 16. On April 20, 2011, in Carpenter I, KTB filed a “Motion to Dismiss or[,] Alternatively, Motion for Summary Judgment with Incorporated Memorandum of Law.” Pro Mow Lawn Care and Coastal Masonry joined the motion. Capital Security filed its own similar motion on May 23, 2011.
¶ 17. On May 25, 2011, a hearing was held in Carpenter I before Judge Jackson. Judge Jackson did not rule at the hearing.
¶ 18. On Monday, June 13, 2011, Judge Jackson entered an order of dismissal in Carpenter I. Judge Jackson recognized the filing of Carpenter II. However, Judge Jackson concluded that the statute of limitations was not tolled and granted the motion to dismiss the claims against the Defendants: KTB, Coastal Masonry, Pro Mow Lawn Care, and Capital Security. Judge Jackson did not address, the motion for summary judgment and did not address the motion for consolidation. Judge Jackson did not consider the arguments of claim-splitting. :
¶ 19. On Thursday, June 16, 2011, a hearing was held in Carpenter II before Judge Krebs. At the conclusion of the hearing, Judge Krebs announced his decision to grant the motion to dismiss and instructed counsel to prepare an order.
¶ 20. On June 27, 2011, in Carpenter I, Judge Jackson entered a “Final Judgment of Dismissal,” which dismissed the Defendants: KTB, Coastal Masonry, Pro Mow Lawn Care, and Capital Security. The final judgment of dismissal was certified as a final judgment under Mississippi Rule of Civil Procedure 54(b).
¶ 21. Also, on June 27, 2011, in Carpenter II, Judge Krebs, entered a “Judgment of Dismissal,” which dismissed the Defendants: KTB, Coastal Masonry, Pro Mow Lawn Care, and Capital Security.
¶22. Carpenter appealed both judgments. The Clerk of the Mississippi Supreme Court, assigned separate, case numbers to each case, - Carpenter filed a motion to consolidate the cases on appeal. Before the case, was deflected, to this Court, the clerk issued a notice that the supreme court had consolidated the cases for this appeal:- There-is no order granting consolidation, but the decision to consolidate was made by the supreme court.
STANDARD-OF REVIEW
¶23. The motions that were granted asserted that the circuit court should dismiss the case under the authority of Mississippi Rule of Civil Procedure 12(b)(6). Here, there is no dispute about the facts *860 that are alleged in the complaint. Instead, the cases were dismissed under two legal doctrines, priority jurisdiction and . claim-splitting. : When reviewing a trial court’s grant of a motion to dismiss, this Court applies a de novo standard of review. Scaggs v. GPCH-GP, Inc., 931 So.2d 1274, 1275 (¶ 6) (Miss.2006).
ANALYSIS
¶ 24. This appeal considers the dismissal of Carpenter’s claims by two different judges, in two separate actions filed in the same circuit court. The legal doctrines before us, priority jurisdiction and claim-splitting, usually consider two separate cases that are filed between the same parties, but in different courts. Also', when these legal principles are applied, one of the cases will survive and be litigated to its conclusion. Here, neither case survived. In fact, on the very same day, two different judges both dismissed Carpenter’s claims against the Defendants.
¶25. Mississippi Rule of Civil Procedure 1 requires courts to construe the rules “to secure the just; speedy, and inexpensive determination of every action.” The Comment provides:
The purpose of Rule 1 is to state the scope and applicability of the Mississippi Rules of Civil Pi’ocedure and the basic philosophical principle for their judicial construction.... It is intended that these rules be applied as liberally to civil actions as is judicially feasible, whether in actions at law or in equity.... ■ The salient provision of Rule 1 is the' statement that “These rules shall be construed to secure the just, speedy, and inexpensive determination of every action.” There probably is no provision in these rules more important thay, this mandate: It reflects the spirit in which the, rules were conceived and written and in which they should be interpreted.
The primary purpose of procedural rules should be to promote the ends of justice; .these rules reflect the view that this goal can be best accomplished by the establishment of a single form of action, known as a “civil action,” thereby uniting the procedures in law and equity ■through a simplifled.procedure that minimizes technicalities and places consider- . able ■ discretion in the trial judge for construing the -rules in a manner that will secure their objectives.
Properly utilized, the rules will tend to discourage battles over mere form and to sweep away needless procedural controversies that either delay a trial on the merits or deny a party his day in court because of technical deficiencies. The mandate in the final sentence of Rule 1 is only one of a number of similar admonitions scattered throughout the rules directing that the rules be interpreted liberally in order that the procedural framework in which litigation is conducted promotes the ends of justice and facilitates decisions on the merits, rather than determinations on technicalities _ ■
The keystone to the effective functioning of the ■Mississippi Rules of Civil Procedure is, obviously, the discretion of the trial court. The rules grant considerable power to the judge and only provide general guidelines as to the manner in which it should be exercised. Accordingly, judges must view the rules with a firm understanding of the philosophy of the rules and must exercise a wise and sound discretion to effectuate the objective of the simplified procedure. The rules will remain a workable . system only so long as trial judges exercise their discretion intelligently on a case- . by-case basis; application of arbitrary rules of law to particular situations will *861 have a debilitating effect on the overall system.
M.R.C.P. 1 cmt. (emphasis added).

I. The Motion to Consolidate

¶ 26. Although a motion to consolidate was filed in each case, neither Judge Jackson nor Judge Krebs ruled on either motion. We would not normally consider a motion that was not ruled on at the trial court level. However, here, the consolidation of two separate cases before two judges of the same circuit court would tend to lead to a consistent and efficient result. The record reveals that both judges wére aware of the other' proceedings. Yet neither judge discussed or ruled on the motion to consolidate.
¶ 27. Rule 42(a) of the Mississippi Rules of Civil Procedure provides:
When actions involving a common question of law or fact are pending before the court, it may order a joint hearing or trial of any matters in issue in. the actions; it may order all the actions consolidated; and it may make such orders concerning proceedings therein as may tend to avoid unnecessary costs or delay.
The decision of whether to consolidate cases “is within the sound discretion of the trial court.’.’ Smith v. H.C. Bailey Cos., 477 So.2d 224, 231 (Miss.1985). Here, it appears that Carpenter I and II were the perfect candidates for consolidation, under both Rules 1 and 42.
¶ 28. Indeed, after both cases were appealed, another motion to consolidate was filed. The supreme court, acting through its legal staff, consolidated these cases on appeal by the entry of a clerk’s notice. These cases have now been consolidated and should remain consolidated for our review and on remand. Certainly, the need for this appeal may have been avoided if the trial judges had either consolidated the cases or reassigned the presiding judge of-one of the cases, so that one circuit judge would have ruled on both cases. &e M.R.C.P. 1 & 42.
II. Carpenter II — Order Granting Motion to Dismiss
A. Clainv-Splitting
¶29. Because the cases were decided by two judges on the same day, we must choose where to begin. Considering the consolidation of these cases by the supreme court, we will begin with a review of Judge Krebs’s decision in' Carpenter II.
¶ 30. On June .22, 2010, when the complaint was filed in Carpenter II, there were no claims pending in Carpenter, I between Carpenter and the Defendants. Despite Carpenter’s efforts,, the Defendants were not parties in Carpenter I. The first lawsuit filed against and served upon the Defendants was Carpenter It
¶31. Judge Krebs announced that he found the following language in Wilner v. White, 929 So.2d 315, 320 (¶ 5) (Miss.2006), was dispositive:
Respectfully, the-’ Court of Appeals is mistaken in .its assumption that Wilner •could have properly named the new parties in a separate complaint. Had Wil-ner done this, she would have offended the long-standing principal of law in Mississippi prohibiting a party from splitting a cause of action into the subject .of two different actions[.j
Then, Judge Krebs ruled from .the bench:
-A' cause; of action under our law is a lawsuit 'by itself.' Contained in that .cause of action, are different elements: tortious breach of conduct, et cetera. [ (Citing Wilner).] I believe, if I interpret it correctly, [it] is saying, we do not want to see lawsuits arising out of the same incident where lawyers in one case will file against “x” number of defendants,, let’s say for breach of- contract, *862 failure to repair, et cetera, .then come back in dealing with the same plaintiff, the same injury, and saying,.we’re going to have other elements this time. Maybe not breach of contract but other types [of] tortious conduct. A suggestion that a party should take this course of action in the future is encouraging that party to ignore the law.
I’m not insensitive to the difficulty in getting a hearing, counselor. I am certainly not insensitive to people getting their days in court. But this judge has to follow the law. Wilner controls. The motion is sustained in this case. It’s dismissed with prejudice.
¶ 32. Although Wilner'has a discussion about claim-splitting, it is not .actually a claim-splitting case. The supreme - court reversed this Court’s decision, which was written by then Presiding Judge Leslie King, that considered whether the relation-back doctrine appliéd. The language of that opinion that has been cited and used as authority in this case was merely the supreme court’s response and correction to dicta included in this Court’s opinion. The supreme court’s analysis of the doctrine of claim-splitting does not apply here.
¶ 33. On January 27, 1997, Iris Wilner was operated on by Dr. Neil White. Id. at 317 (¶ 2). She filed a medical-malpractice complaint against the hospital, a nurse, and several John Doe defendants on Féb-ruary 12, 1998.' On January 27, 1999, the day that the statute of limitations expired, Wilner filed a amended complaint against four defendants, including Dr. White and his clinic. Id. at 317-18 (¶ 2). Wilner did not obtain leave of court to- file the amended complaint. Id. Dr. White filed a motion to dismiss and argued that Wilner did not get leave of court to amend her complaint before the limitations period expired. Id. at 318 (¶2). The trial court denied the motion for leave to amend that was subsequently filed. Then, the trial court dismissed the complaint, finding that the amended complaint was not properly filed and did not relate back to the original complaint. Id. This Court reversed the trial court’s judgment and ruled that the trial court should have granted the motion to amend. Id. at 319 (¶ 4).
¶ 34. The supreme court reversed and held:
The Court of Appeals relied on its prior decision in King v, American RV Centers, Inc., 862 So.2d 558 (Miss.Ct.App. 2003) to prevent Wilner from losing her day in court, using the following reasoning:
If Wilner had named the four new parties in a separate, original complaint and moved to consolidate the two cases, we would not have an issue with the statute of limitations, nor would there be an issue regarding relating back. Should she be denied the opportunity to proceed even though she filed suit against the new- parties before the statute of limitations ran and had a summons and a complaint (although designated as an amended complaint) served on the- new parties within the period of time required by Mississippi Rules of Civil Procedure 4(h)? We think not.
In King v. American RV Centers, Inc., 862 So.2d 558 (Miss.Gt.App: 2003), we held that the- trial court erred in dismissing an amended complaint, which was filed-prior to the expiration of the statute of limitations, although the plaintiff could not technically file an amended complaint because there was no original complaint to amend. Id. at 562 (¶ 20-21). We found that at the time the plaintiff filed the amended complaint he could have filed an original complaint; *863 therefore, he should not lose his day •in court because of the technicality, that to do so would exhort form over substance. Id. We find our reasoning in King helpful here. If Wilner had not renamed the original parties in her amended complaint, this case would be virtually indistinguishable from King. The fact, however, does not seem to be a compelling reason for holding any differently than we did in King. Therefore; for the reasons discussed, we reverse, and remand the grant of summary judgment.
Respectfully, the Court of Appeals is mistaken in its assumption that Wilner could have properly named the new parties in a separate complaint. Had Wilner done this, she would have offended the long-standing principal of law in Mississippi prohibiting a party from splitting a cause of action into the subject of two different actions, reaching back to this Court’s decision in Kimball v. Louisville and Nat’l R.R. Co., 94 Miss. 396, 48 So. 230 (1909). See also Harrison v. Chandler-Sampson Ins., Inc., 891 So.2d 224, 234 (Miss.2005); Alexander v. Elzie, 621 So.2d 909, 910 (Miss.1992). Suggesting that a -party should take this course of action in the future is encouraging that party to ignore the law. Further, King is not applicable here; rather, we find King to be not only easily distinguishable from today’s case, but also an inaccurate statement of the law. First, the issue presented for review before the Court of Appeals in King was not relation back, but the 120-day time period for service after the filing of -an original complaint. Second, the pronouncement in King encourages exactly what we have already stated is not allowable'-under Mississippi law — the splitting of a cause of action. To the extent that King could be interpreted to allow a party to split causes of action, King is expressly overruled. This Court reiterated in- Alexander the rule against splitting a cause of action and the reasons for it, quoting from the Restatement of Judgments:
§ 62 SPLITTING CAUSE OF ACTION-JUDGMENT ' FOR PLAINTIFF OR DEFENDANT.
Where a judgment is rendered, whether in . favor of the plaintiff or of the defendant, which precludes the plaintiff from thereafter maintaining an action upon, the original cause of action, he cannot maintain an .action upon any part of the original cause of action, although that part of the cause of action was not litigated in the original action, except....
(c) where the defendant consented to the splitting of the plaintiff’s cause of action.
Comment:
a. Rationale: The rule stated in this Section is based on the idea that where a person has a single cause of action, in the interests of convenience and economy to the public and to the defendant^] he should be entitled to . but one right of action and hence should be required to unite in one proceeding all matters which are part of it.
Alexander, 621 So.2d at 910. The Court of Appeals in King treated the original complaint as “dead” because no service of process occurred within the 120-day ■time period and because the trial court there had ordered its dismissal. King, 862 So.2d at 663. With all deference to >the Court of Appeals, this is flawed reasoning because a judgment of dismissal had in fact been rendered, precluding the plaintiff from maintaining an action upon any part of the -original cause of *864 action. Similarly, the trial court also ordered the case sub judice dismissed, but that -ruling was reversed by the Court of Appeals in Wilner I. The issue today concerns the grant of a motion for summary judgment, not a motion to dismiss. Second, as noted above, the amended complaint in King was filed before the expiration of the .statute of limitations. Here, that is not the case. In today’s case, only the motion to amend the complaint was' considered filed before the expiration of the statute of limitations. Curry makes it clear that the amended complaint could not have been anything more than an attachment to the motion to amend until the court had ruled on that motion. When the trial court in the case sub judice denied the motion to amend, the practical effect was no amended complaint had ever been filed. However, the Court of Appeals, in Wilner I, reversed the trial court’s denial of the motion to . amend and grant of dismissal and remanded the case with instructions to allow the amendment. However, without question, Wilner was required to seek leave of court to file an amended complaint because her original complaint was not “dead,” but instead still very much a viable pleading. Although we have already discussed King from the standpoint of splitting causes of action, we also note that the Court of Appeals in King held that the plaintiff was not required to seek leave of court because the original complaint was found to be “dead” and thus the amended complaint was treated as a new original complaint. After an original complaint has been filed, an amended complaint, except as otherwise provided by rule, may be filed only upon seeking and receiving leave of the court to do so. Thus, we respectfully disagree with the reasoning applied by the Court of Appeals in that we do not agree that- the amended complaint can be treated, for purposes of the added parties, as an original complaint.
Wilner, 929 So.2d at 319-21 (¶5) (footnote and citations omitted).
¶35. There are several reasons why Wilner does not govern this case. First, in Wilner, the supreme court relied on section 62 of the Restatement of Judgments. The court failed to include comment (b), which provides:
Different parties. The rule stated in this Section presupposes a claim and judgment of a single plaintiff against a single defendant. It does not deal with situations in which there is a single event or transaction from which arise a number of claims by one person against several or by several persons against one or a number of persons. Thus, a person may have a claim against a number of others on a joint and several contract or because of a joint tort; or a number of persons may be entitled to maintain actions for a single act....
(Emphasis added). This comment to the very legal authority the supreme court cited, section 62, clearly shows that section 62 does not apply to the facts in issue in Carpenter II. .
¶ 36. ' In another claim-splitting case, Harrison v. Chandler-Sampson Ins., 891 So.2d 224, 236-37 (¶ 37) (Miss.2005), the supreme court held:
Identity of the parties to the cause of action.
“To satisfy the identity of parties element, strict identity of the parties is not necessary. A non-party defendant can assert res judicata so long as it is in ‘privity1 with a named defendant.” In the present case the identical parties are involved. In both suits the Harrisons named Chandler-Sampson in its capaci *865 ty as the insurance agent who wrote the Harrisons’ policy.
(Citations omitted). Claim-splitting requires the same parties in the different cases. Such was not the case here when Carpenter II was filed.
¶37. Wilner also cites, Kimball v. Louisville & N.R. Co., 94 Miss. 396, 396, 48 So. 230, 231 (1909), as, authority, jn 1906, E.D. Kimball was injured when he tried to drive across a railroad track. He sued the railroad company. A trial was held, and Kimball “recovered a judgment against the railroad company for damage done a horse and wagon by the same wrongful act.” Id. The railroad company paid the judgment. Kimball then filed a second suit against the same -railroad company to recover damages for his personal injuries from the same accident. The railroad company plead the “former recovery in a suit for injury done his,property by the same act being beyond dispute.” Id. The trial court gave the railroad company a peremptory instruction, and Kimball appealed. Id. at 397, 48 So. at 231. •
¶38. The supreme court affirmed and held:
[Wjhere a person sustained injuries both to himself and his property by the same tortious act, it gave rise to but a single cause of action. There seems to be much conflict of authority on this subject, but the weight of better authority is in keeping with the holding of this court. The case of King v. Chicago, M. & St. P.R. Co. ... is a very instructive case on this subject, and in the opinion and notes will be found a collation of many authorities. In the King case, above referred to, in discussing the question of whether or not, where one is injured both in his person and property by the same tortious act, it constitutes more than one cause of action, the court held that the different injuries constituted separate items of damage, but only gave rise to one cause of action, and further held that in such a case “that rule of construction should be adopted which will most speedily and economically bring litigation to an end, if at the same time it conserves the ends of justice. There is nothing to be gained in splitting up the rights of an injured party as in this case, and much may be saved if one. action is made to cover the subject.” We quote the above language with unqualified approval as applied to this case.
Kimball, 94 Miss. at 397, 48 So. at 231 (internal citations omitted). Kimball has no relevance to this case.
¶ 39, Finally, in Alexander v. Elzie, 621 So.2d 909, 910 (Miss.1992), the supreme court addressed the issue of claim-splitting: . :
Where a claim has been previously litigated, all grounds' for, or defenses to recovery that were availablé to the parties in the first action, regardless of whether they were asserted or determined in the prior proceeding, are barred from re-litigation in a subsequent suit under the doctrine of res judicata. Res judicata and the issue of splitting a cause of action are closely related. Mississippi is among the majority of states which does not allow splitting a cause of action. Kimball v. Louisville and National Railroad Co., 94 Miss. 396, 48 So. 230' (1909).'
(Internal citations omitted).
¶ 40. The doctrine of claim-splitting, just like res judicata, requires that the parties be identical. It also requires that a judgment be entered in favor of one of the parties. When Carpenter II was filed, the identity of the parties in Carpenter I and Carpenter II was not the same.
*866 ¶ 41. After Carpenter II was filed, Judge Jackson entered an order that granted leave to file the second amended complaint and allowed the Defendants to be served with process. Upon service, the identity ■ of the parties was the .same. However,, in Carpenter I, Judge Jackson then determined that the statute- of limitations had, expired before the Defendants were served with the complaint in Carpenter I. She also determined that the relation-back doctrine was not applicable, and she dismissed .the claims against the Defendants in Carpenter I. Thus, upon the dismissal of the Defendants in Carpenter I, there was once again no identity of the parties in the two lawsuits.
¶42. As discussed below, we cannot predict what Judge Jackson would have decided as to the relation-back doctrine, if Carpenter II had been consolidated with Carpenter I. However, the Defendants were served with process in Carpenter II before the limitations period expired. Knowing that the Defendants had been served with process and actually had notice of the claims that were brought in both Carpenter I and II, the decision that the claims would not relate back under Mississippi Rule of Civil Procedure 15(e) does not seem logical.
¶ 43. The facts in this case are not similar to Wilner, Kimball, and Alexander. As a result, when Carpenter II was filed, the doctrine of claim-splitting did not apply. After considering the consolidated cases, we are of the opinion that it was error for Judge Krebs to dismiss Carpenter II based on the doctrine of claim-splitting. On this issue, we reverse and remand Carpenter II.

B. Priority Jurisdiction

¶ 44. Although not mentioned in his ruling at the hearing, Judge Krebs’s final judgment also stated that Carpenter’s complaint in Carpenter II was improper “based on principles of priority of jurisdiction.” The final judgment did not give further explanation as to how priority jurisdiction applied here. It does not.
¶ 45. Hirst, we note that priority jurisdiction normally results in transfer of the case or the dismissal of the second case to allow the first to proceed. Second, we note that although Carpenter filed two lawsuits, both were filed in the same court — the Circuit Court of Jackson County. The fact that the' cases were assigned to two different judges in the same court district does not mean that the doctrine of priority jurisdiction applies.
¶46. In Compere v. Saint Dominic Jackson Memorial Hospital, 71 So.3d 607, 610 (¶8) (Miss.2011), the supreme court held:
It is fundamental that a plaintiff is not authorized simply to ignore a prior action and bring a second, independent action on the same state of facts while the original action is pending. Hence a second action based on the same cause will generally be abated where there is a prior action pending in a court of competent jurisdiction within the same state or jurisdictional territory, between the same parties involving the same or substantially the same subject matter- and cause of-action, and in which prior action the rights of the parties may be determined and adjudged.- ■
(Citation omitted).
¶47. Here, there is no evidence that Carpenter “ignore[d] the prior action” before she filed Carpenter II. Rather, it appears that she attempted to bring all of her claims in one action, but this effort was prevented by her inability to obtain a hearing. A mere reassignment by one of the judges would have had both cases before the same judge in the same court.
*867 ¶ 48. Priority jurisdiction considers which court should preside over a case when a second action is filed in, “a court of competent jurisdiction within the same state or jurisdictional territory, between the same parties involving the same or substantially the same subject matter and cause of action, and in which prior action the rights of the parties may be determined and adjudged.” Id. These cases were not filed in separate courts; both were filed in the same court. The doctrine of priority jurisdiction presupposes that there is a pending action that the plaintiff can proceed upon and obtain adequate relief. Here, the circuit judges dismissed both actions.
¶49. We find that it was error for Judge Krebs to dismiss Carpenter II under the doctrine of priority jurisdiction. Accordingly, we reverse and remand Carpenter II.
III. Carpenter I — Order Granting Motion to Dismiss
¶ 50. In Carpenter I, Judge Jackson’s order of dismissal considered “whether these defendants are fictitious parties as contemplated by [Mississippi] Rule [of Civil Procedure] 9(h) and whether the claims relate back so as to fall within the statute of limitations.” Judge Jackson ruled. that the Defendants were served with the Carpenter I complaint after the statute of limitations expired, and the Rule 15(e) relation-back doctrine did not apply. Looking at it solely from Judge Jackson’s perspective, without the consideration of Carpenter II as discussed above, her analysis appears to be correct.
¶ 51. However, we do not view this appeal solely from Judge Jackson’s perspective. The supreme court has consolidated these cases for' our review. We recognize the Defendants were served with process in Carpenter II before the limitations period had expired. Knowing that the Defendants had been served with pro-, cess and actually had notice of the -claims that were' brought in both-Carpenter I and II, the decision that the claims would not relate.back under. Rule 15(c) does not seem logical.[5]
¶ 52. Having reversed and remanded Carpenter II, and because the cases have been consolidated, the question on remand will be whether Carpenter II was filed against the Defendants within the limitations period and timely served on the Defendants under the' Mississippi Rules of Civil Procedure. From the pleadings in the record before us, it appears that' Carpenter II was filed within the limitations period, and there is no need to consider the relation-back doctrine or Rule 9(h). If the service of process on the Defendants was timely in Carpenter II, the action should be considered timely filed and within the limitations period.

IV. Conclusion

¶ 53. For these reasons, we find that the judgment entered in Carpenter II is reversed and remanded for further proceedings consistent with this opinion. Likewise, we find that the judgment rendered in Carpenter I is. vacated and remanded for further proceedings consistent with this opinion. Due to the consolidation of these cases, the cases are remanded to the Circuit Court of Jackson County. The Clerk of the Circuit Court of Jackson County shall consolidate these cases and assign them to Judge Jackson, who was the presiding judge in Carpenter I.
*868 ¶ 54. THE JUDGMENT OF THE JACKSON COUNTY CIRCUIT COURT IN CASE NO. 2010-00177 (1) (2011-CA-01028-COA) IS REVERSED, AND THIS CASE IS REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. THE JUDGMENT OF THE JACKSON COUNTY CIRCUIT COURT IN CASE NO. 2008-00140 (2) (2011-CA-01033-COA) IS VACATED, AND THIS CASE IS REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLEES.
LEE, C.J., IRVING, P.J., BARNES, ROBERTS, FAIR AND JAMES, JJ., CONCUR. CARLTON, J., DISSENTS WITH SEPARATE WRITTEN OPINION, JOINED BY ISHEE, J. MAXWELL, J., NOT PARTICIPATING.

. These defendants are not affected by the appeals before this Court. Carpenter I is a viable lawsuit, and the claims asserted by Carpenter against these defendants remain pending in the Circuit Court of Jackson County. Carpenter I is before this court under a Mississippi Rule of Civil Procedure 54(b) certification.

. We recognize that MDOT may have had a reason to not agree to the entry of an order allowing an amendment to the complaint. However, based on the clear instruction in Mississippi Rule of Civil Procedure 15 that leave to amend be granted "freely,” a motion for leave to amend pleadings is not the type of motion that should normally be contested. For the denial of a motion to amend to be proper, the opposing party must show some type of prejudice.

. Matters set for a hearing should be of significant merit. Mississippi Rule of Professional Conduct 3.1 provides that "[a] lawyer shall not ... controvert an issue therein, unless there is a basis in law and in fact for doing so_” Rule 3.2 provides that "[a] lawyer shall make reasonable efforts to expedite litigation consistent with the interests of the client.” The Comment states “[djilatory practices bring the administration of justice into disrepute. Delay should not be indulged merely for the convenience of the advocates, or for the purpose of frustrating ah opposing party’s attempt to obtain rightful redress or repose.” Typically, orders granting leave to amend should be routinely executed, without the necessity of a hearing, unless one party has a real and clearly stated objection that is included in a responsive pleading.

.On October 14, 2010, Pro Mow Lawn Care served and filed a pleading, called a "Join-der,” where it "joined the motion to consolidate.” On October 21, 2010, Capital Security served and filed a pleading, also called a "Joinder,” where it "respectfully requests that this court grant the motion to consolidate.” On January 3, 2011, Pro Mow Lawn Care served and filed a notice of withdrawal of joinder. We do not find a withdrawal of Capital Security’s joinder in the record.

. We note that three'of the Defendants — KTB, Coastal Masonry, and Pro Mow Lawn Care— have plead, in their responsive pleading in Carpenter II, the expiration of the statute of limitations as an affirmative defense: Capital Security did not.